David J. Jordan (1751)
david.jordan@stoel.com
Jordan C. Bledsoe (15545)
jordan.bledsoe@stoel.com
STOEL RIVES LLP
201 S. Main Street, Suite 1100
Salt Lake City, UT  84111
Telephone:  801.328.3131

*Attorneys for Jim Lundberg*

# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DISTRICT

| | |
|---|---|
| JIM LUNDBERG, an individual,<br><br>        Plaintiff,<br><br>   v.<br><br>VIVINT SOLAR, INC., a Utah corporation; and JOHN DOES 1–10, individuals,<br><br>        Defendants. | **COMPLAINT**<br><br>Case No. 2:20-cv-00683-DBB<br><br>The Honorable David Barlow |

Plaintiff Jim Lundberg hereby complains against defendants Vivint Solar, Inc. ("Vivint Solar") and John Does 1–10 ("John Does") and for his causes of action alleges as follows:

## NATURE OF THE ACTION

This case is about Vivint Solar's unlawful refusal to redeem Lundberg's vested stock options and to deliver vested restricted stock units (RSUs) that belong to Lundberg.  In 2014, Vivint Solar hired Lundberg as an in-house attorney to assist with its initial public offering (IPO).  As part of his compensation, Lundberg received a series of equity awards consisting of RSUs and options to purchase Vivint Solar common stock, subject to vesting schedules set forth in each respective award agreement.  After Vivint Solar completed its IPO, Lundberg engaged in discussions with Vivint Solar and its affiliate, Vivint Smart Home, Inc. ("Vivint Smart Home"), to transfer to Vivint Smart Home to assist with a potential IPO and other potential transactions.  Vivint Solar agreed but asked Lundberg to stay on with Vivint Solar as an advisor and consultant, in addition to working for Vivint Smart Home.  Lundberg agreed and provided services for both companies well into 2017.

Under Lundberg's equity award agreements, the stock he received from Vivint Solar continued to vest so long as Lundberg worked for an affiliate of

Vivint Solar, under the common control of a parent company.  Vivint Solar and Vivint Smart Home are affiliates and operate under the common control of the same parent company.  Indeed, both companies have represented in SEC filings that they are "affiliates" and "sister companies."  In addition, those filings show that Vivint Solar and Vivint Smart Home are owned and controlled by the same parent company.  As such, the stock option and RSU awards Lundberg received from Vivint Solar continued to vest while he worked for Vivint Smart Home.

In accordance with his contractual rights, Lundberg recently notified Vivint Solar that he desired to take delivery of his vested RSUs and was exercising his stock options.  He tendered a check in the amount of the exercise price of the options.  In response, outside counsel for Vivint Solar sent a letter asserting that Lundberg had forfeited his stock options and RSUs when he transferred to Vivint Smart Home.  The letter ignored the fact that Vivint Solar and Vivint Smart Home are affiliates and under the common control of the same parent company, and that Lundberg had continued as a consultant and advisor for Vivint Solar after he began working for Vivint Smart Home.

While Vivint Solar acknowledges in its SEC filings that it is an affiliate of Vivint Smart Home and under the common control of the same parent company, when it comes to redeeming employee stock options and delivering vested RSUs,

3

Vivint Solar now denies any affiliation or common control with Vivint Smart Home.  Either Vivint Solar is making material misrepresentations in its public filings (i.e., committing securities fraud), or it is violating its agreements with equity award holders and fraudulently inducing them to rely to their detriment on SEC filings and other company representations.  Under either scenario, Lundberg is entitled to be compensated for the full value of his vested stock options and vested RSUs as promised in the equity awards he received from Vivint Solar.

## PARTIES, JURISDICTION, AND VENUE

1.    Plaintiff Jim Lundberg is an individual residing in Utah.

2.    Defendant Vivint Solar, Inc. is a Utah corporation with its principal place of business in Lehi, Utah.

3.    Defendants John Does 1–10 are officers and directors of Vivint Solar or its parent company, and/or members of committees set up under Vivint Solar equity incentive plans who (1) participated in the decision to deny Lundberg his right to receive vested RSUs or exercise the stock options he was granted by Vivint Solar, (2) interpreted Vivint Solar's equity incentive plan in such a way that it is inconsistent with Vivint Solar's public filings and statements, and/or (3) caused Vivint Solar to make material misrepresentations in its public filings regarding its affiliation or common ownership with Vivint Smart Home.

107759967  0204718-00001

4.      This Court has federal-question jurisdiction, pursuant to 28 U.S.C. § 1331, over Lundberg's claims for violation of the Securities Act of 1933 and violation of the Securities Exchange Act of 1934.  Those causes of action arise under federal law and, therefore, give rise to federal-question jurisdiction.

5.      This Court has supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over Lundberg's claims for breach of contract, breach of the covenant of good faith and fair dealing, fraudulent inducement, negligent misrepresentation, and conversion.  Those claims, like the federal claims, arise out of Vivint Solar's and John Does' refusal to deliver the vested RSUs and to allow Lundberg to exercise the stock options he was granted by Vivint Solar.  *See Price v. Wolford*, 608 F.3d 698, 702 (10th Cir. 2010) ("Once a district court has jurisdiction, additional claims and parties can be added under the supplemental-jurisdiction statute, 28 U.S.C. § 1367(a), which grants the district courts jurisdiction 'over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.'" (quoting 28 U.S.C. § 1367)).

6.      This Court has personal jurisdiction over Vivint Solar because it is a Utah corporation with its principal place of business in Utah.  This Court has personal jurisdiction over John Does because they are officers, directors, and/or

members of committees of Vivint Solar or its parent company who have conducted business on behalf of Vivint Solar in Utah, and have attended meetings in Utah in their capacities as officers, directors, and/or members of committees of Vivint Solar or its parent company.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Vivint Solar is a Utah corporation with its principal place of business in Utah; a substantial part of the events or omissions—Vivint Solar's improper denial of Lundberg's exercise of his stock options and failure to deliver to Lundberg his vested RSUs—giving rise to Lundberg's claims occurred in Utah; and Vivint Solar and John Does are subject to the Court's personal jurisdiction.

## **GENERAL ALLEGATIONS**

**Vivint Solar Hires Lundberg**

8.      In May 2014, Vivint Solar hired Lundberg as its associate general counsel.

9.      Vivint Solar hired Lundberg, in significant part, to assist it in completing its IPO.

10.     As part of his employment agreement, Vivint Solar granted Lundberg an equity incentive award in the form of a nonqualified stock option to purchase shares of Vivint Solar common stock.  *Id.*

6

**Lundberg Is Granted His First Equity Award**

11.     On July 7, 2014, in accordance with his employment agreement, Vivint Solar granted Lundberg a nonqualified stock option to purchase 30,000 shares of Vivint Solar common stock (the "First Equity Award").

12.     The First Equity Award was granted pursuant to Vivint Solar's 2013 Omnibus Incentive Plan (the "2013 Plan") and the Nonqualified Stock Option Agreement ("2014 Option Agreement").  The 2013 Plan and 2014 Option Agreement provided that one-third of Lundberg's First Equity Award would vest and become exercisable by twenty percent "on each of the first five anniversaries." The other two-thirds of Lundberg's First Equity Award were performance-vesting options that were triggered by Vivint Solar's receipt of a sum certain for its common stock.

13.     Under the 2013 Plan, Lundberg's First Equity Award would vest according to the schedule under the plan as long as he was an "individual employed by [Vivint Solar] or an Affiliate."  2013 Plan § 2(p).  If Lundberg ceased to be "employed" by Vivint Solar or an Affiliate before the First Equity Award vested, he would forfeit that award.  *Id.* § 7(c)(2).

        a.     Under the 2013 Plan, "Employment" means "(i) a Participant's employment if the Participant is an employee of the Company ***or any of its***

*Affiliates* or Subsidiaries (or Parent or one of its Subsidiaries), (ii) a Participant's *services as an advisor*, if the Participant is an advisor to the Company *or any of its Affiliates* or Subsidiaries (or Parent or one of its Subsidiaries) . . . ."  2013 Plan § 2(p) (Emphases Added).

      b.     An "Affiliate," for purposes of Section 2(p) includes, in relevant part, ". . . . (3) any corporation, trade or business 50% or more of the combined voting power of such entity's outstanding securities is directly or indirectly controlled by [Vivint Solar] or any Subsidiary *or Parent Corporation* . . . and (5) any other entity in which [Vivint Solar] or any Subsidiary or *Parent Corporation has a material equity interest* and which is designated as an 'Affiliate' by the Committee."  *Id.* § 2(p) (Emphases Added).

14.    Lundberg's First Equity Award is fully vested because five years have elapsed since Lundberg received the First Equity Award, Vivint Solar achieved the benchmarks in the 2014 Option Agreement that triggered the performance-vesting options, and, at all relevant times, Lundberg was an employee of Vivint Solar or Vivint Smart Home, which is and was Vivint Solar's Affiliate (as defined in the 2013 Plan).

107759967  0204718-00001

**Lundberg Is Granted His Second and Third Equity Awards**

15.     On April 3, 2015, Lundberg was granted a second equity award from Vivint Solar wherein he received 7,632 RSUs and a nonqualified stock option to purchase 7,632 shares of Vivint Solar common stock (the "Second Equity Award").

16.     The Second Equity Award was issued pursuant to Vivint Solar's 2014 Equity Incentive Plan (the "2014 Plan") and the Notice of Restricted Stock Unit Grants and Restricted Stock Unit Agreement dated May 14, 2015 (the "2015 RSU Agreement").  Per those documents, 25% of Lundberg's Second Equity Award vested on May 14, 2016, and the remainder over the next twelve quarters, with the Second Equity Award fully vesting on May 14, 2019.

17.     On May 11, 2016, Lundberg was granted a third equity award from Vivint Solar whereby Lundberg received 88,706 RSUs (the "Third Equity Award").

18.     The Third Equity Award was issued to Lundberg pursuant to Vivint Solar's 2014 Plan and the Notice of Restricted Stock Unit Grant and Restricted Stock Unit Agreement dated May 9, 2016 (the "2016 RSU Agreement").  Per those documents, Lundberg's Third Equity Award had a two-year vesting period, with

107759967  0204718-00001

50% of the RSUs eligible to vest on May 15, 2017 and 50% eligible to vest on May 15, 2018.

19.    Lundberg's Second and Third Equity Awards would fully vest on May 14, 2019 and May 15, 2018, respectively, so long as he was a "Service Provider" as of those dates.  2014 Plan § 21(kk).

20.    Under the 2014 Plan, a "Service Provider" means an "Employee, Director or Consultant."  *Id.*

  a.    An "Employee" includes "any person, including Officers and Directors, employed by the Company ***or any member of the Company Group***. . . ."  *Id.* § 21(m) (emphasis Added).

  b.    A "Consultant" means "any natural person engaged by a member of the Company Group to render bona fide services to such entity, providing the services (i) are not in connection with the offer or sale of securities in a capital raising transaction, and (ii) do not directly promote or maintain a market for [Vivint Solar's] securities."  *Id.* § 21(k).

  c.    The "Company Group" means Vivint Solar or "any entity that, from time to time and at the time of any determination, ***directly or indirectly***, is in control of, is controlled by or ***is under common control with*** [Vivint Solar]."  *Id.* § 21(j) (emphases Added).

10

21.     Lundberg's Second and Third Equity Awards fully vested because, as of May 15, 2018 and May 14, 2019, Lundberg was employed by a member of the Company Group, Vivint Smart Home.  Vivint Smart Home is under common control with Vivint Solar.[1]

**Lundberg Works for Vivint Solar and Vivint Smart Home**

22.     In or around June 2016, Lundberg began discussing with Vivint Solar and Vivint Smart Home the possibility of working for Vivint Smart Home.

23.     During those conversations, the parties discussed an arrangement whereby Lundberg would assist Vivint Smart Home in completing an IPO while also continuing to consult, advise, and perform work for Vivint Solar.

24.     Specifically, Vivint Solar's chief executive officer, David Bywater, and general counsel, Dan Black, spoke with Lundberg regarding that arrangement.

25.     As a result of those conversations, Bywater and Black asked Lundberg to continue his representation of Vivint Solar in connection with (1) the SunEdison, Inc. bankruptcy proceedings, including as a member of the unsecured creditors committee; (2) liquidation of Vivint Solar's claims against SunEdison;

---

[1] In addition, Lundberg was acting as a Consultant (as defined by the 2014 Plan) for Vivint Solar in May 2017 when 50% of his Second and Third Equity Awards vested.

11

and (3) several securities class action lawsuits related to Vivint Solar's IPO. Lundberg agreed.

26.     Lundberg's offer letter from Vivint Smart Home specifically provided that he would continue providing consulting services to Vivint Solar, as requested by Bywater and Black.

27.     As agreed, Lundberg continued to provide services to Vivint Solar after he began working for Vivint Smart Home.  Lundberg spent significant time each week working on matters for Vivint Solar.

**Vivint Smart Home Is an Affiliate of Vivint Solar**

28.     In 2012, Blackstone, through an investment vehicle named 313 Acquisition, LLC ("313"), took a majority ownership stake in Vivint, Inc.  As part of that transaction, 313 became the majority owner of both Vivint Solar and Vivint Smart Home.

29.     In 2014, Vivint Solar completed an IPO on the New York Stock Exchange.  After the IPO, 313 maintained its ownership in Vivint Solar and continued to maintain a majority ownership interest in Vivint Smart Home.  At that time, both entities had the same board of directors.

30.     The following chart illustrates 313's ownership of Vivint Solar and Vivint Smart Home:



31.     To date, Vivint Solar and Vivint Smart Home have, in their SEC filings, relied on the "controlled company" exemption, claiming to be controlled by Blackstone via 313.  In addition, both entities have referred to each other as "affiliates" and "sister companies," and have made other similar references indicating a close affiliation, in their public filings.

107759967  0204718-00001

**Lundberg's Equity Awards Were Not "Forfeited" as a Result of His Transfer from Vivint Solar to Vivint Smart Home**

32.    Under the express terms of both the 2013 Plan and 2014 Plan, Lundberg's transfer of employment from Vivint Solar to Vivint Smart Home did not result in a forfeiture of his Equity Awards.

33.    Specifically, the 2014 Plan expressly contemplates that "*a Participant will not cease to be an Employee in the case of … any transfer between … other members of the Company Group*."[2]

34.    Similarly, the 2013 Plan provides that a termination will not be deemed to have occurred as a result of a "*transfer from employment or service with one Service Recipient to employment or service with another Service Recipient (or vice-versa)*."[3]

35.    In addition to the 2103 Plan and 2014 Plan, other Vivint Solar equity compensation plans also demonstrate that it was the intent of Vivint Solar, under the direction of 313, to permit plan participants, like Lundberg, to retain awards when transferring employment between entities within the larger family of Vivint companies under the common control of 313.

---

[2] Section 11(a), 2014 Plan.
[3] Section 14(h), 2013 Plan.

14

**Lundberg Exercises His Option to Purchase Vivint Solar Common Stock and His Right to Receive His RSUs**

36.    After Lundberg's transition to Vivint Smart Home, he had not yet taken action with respect to his First, Second, or Third Equity Awards (collectively, the "Equity Awards") because Vivint Solar's stock price fluctuated below the exercise price related to the stock options Lundberg was awarded.

37.    However, on July 6, 2020, Sunrun, a leading U.S. home solar installer, announced that it would be acquiring Vivint Solar, one of its largest competitors. That announcement resulted in Vivint Solar's stock price increasing.

38.    On July 23, 2020, Lundberg sent a letter to Vivint Solar's chief legal officer and equity plan administrator asking Vivint Solar to deliver the RSUs that were part of his Second Equity Award and Third Equity Award.  He also gave notice that he was exercising his option to purchase shares of Vivint Solar common stock that were granted as part of his First Equity Award and Second Equity Award.

39.    On July 28, 2020, Lundberg sent another letter to Vivint Solar's chief legal officer exercising his option to purchase 27,615 shares of Vivint Solar common stock at the exercise price of $4.14.  Lundberg tendered with the letter a check in the amount of $114,326.10 to purchase the stock.

40.    After several weeks passed and Lundberg did not receive a response to his letters, he sent another letter on August 7, 2020.  The letter was addressed to Vivint Solar's president and chief executive officer, chief legal officer, and Vivint Solar's parent company.

41.    In the letter, Lundberg again requested that Vivint Solar deliver the RSUs he was granted and gave notice of his exercise of his outstanding options to purchase Vivint Solar common stock.

**Vivint Solar Denies Lundberg's Requests**

42.    Shortly after sending his August 7 letter, Lundberg received a letter from Vivint Solar's outside counsel.  In the letter, Vivint Solar denied Lundberg's request to exercise his stock options and to deliver to Lundberg his vested RSUs, asserting that he had forfeited his options for the following reasons:

a.    First, Vivint Solar asserted that Lundberg was not entitled to the options to purchase Vivint Solar common stock as part of his First Equity Award and Second Equity Award because Vivint Solar was purportedly not an Affiliate of Vivint Smart Home as of the vesting dates for Lundberg's options to purchase Vivint Solar common stock.

b.    Second, Vivint Solar asserted that Lundberg was not entitled to the RSUs provided in his Second Equity Award and Third Equity Award

16

because he purportedly was no longer a Service Provider (as defined by the 2014 Plan) for Vivint Solar after he began working for Vivint Smart Home, Vivint Smart Home was purportedly not an Affiliate of Vivint Solar, and both entities were not under common control of the same parent company.

      c.     Third, Vivint Solar asserted that Lundberg was not entitled to any of the Equity Awards because the plan administrators for the 2013 and 2014 Plans interpreted those plans in such a way that Lundberg's Equity Awards terminated at the time he began working for Vivint Smart Home, regardless of whether he continued to perform work for Vivint Solar.

43.     Those assertions are belied by—among other things—Vivint Solar's representations in SEC and other public filings in which Vivint Solar and Vivint Smart Home represented they are "affiliates" and "sister companies"; Vivint Solar's representations to Lundberg at the time he began working for Vivint Smart Home; and Lundberg's continued work for Vivint Solar after he began working for Vivint Smart Home.

**Lundberg Exposes the Falsity of Vivint Solar's Assertions, and Vivint Solar Fails to Respond**

44.     On August 13, 2020, counsel for Lundberg sent a letter responding to the false assertions in Vivint Solar's letter.  Specifically, Lundberg pointed out that he continued to work for Vivint Solar after he began working for Vivint Smart

Home, and was specifically asked by Vivint Solar to do so; that Vivint Solar and

Vivint Smart Home repeatedly represented in their SEC filings that they are sister

companies and affiliates under the common control of the same parent company;

and that Vivint Solar and Vivint Smart Home are in the same Company Group (as

defined in the 2014 Plan), as they are owned by 313, and as evidenced by form 10-

K annual reports filed by Vivint Smart Home entities.

45.     In his letter, Lundberg requested that Vivint Solar deliver his Equity

Awards on or before August 19, 2020.

46.     Vivint Solar failed to respond to Lundberg's letter or deliver his

Equity Awards.

### FIRST CAUSE OF ACTION
(Breach of Contract – 2014 Option Agreement – Against Vivint Solar)

47.     Lundberg hereby incorporates by reference the allegations set forth in

the preceding paragraphs as though fully set forth herein.

48.     On July 7, 2014, Vivint Solar and Lundberg entered into the 2014

Option Agreement.  The 2014 Option Agreement constitutes a binding contract

between Vivint Solar and Lundberg.

49.     The 2014 Option Agreement granted Lundberg the right and option to

purchase, on the terms and conditions set forth in the 2014 Option Agreement,

30,000 shares of common stock as of July 7, 2014.  2014 Option Agreement § 1(a),

p. 13.  Lundberg's right and option to purchase those 30,000 shares became exercisable when the options vested pursuant to the schedule set forth in Schedules to the 2014 Option Agreement.  *Id.* § 1(b).

50.    The 2014 Option Agreement provides that Lundberg "may exercise all or any of the Vested Options at any time prior to the tenth anniversary of" July 7, 2014, insofar as his "Employment" has not been terminated.  *Id.* § 2(b).

51.    In addition, the 2014 Option Agreement provides that Lundberg's First Equity Award "may be exercised (in whole or in part) by delivering written or electronic notice to" Vivint Solar.  *Id.* § 2(c)(i).  The notice "shall specify the number of shares of Common Stock for which the Option is being exercised and shall be accompanied by payment in full of the Exercise Price."  *Id.*

52.    Lundberg's right and option to purchase the 30,000 shares has become exercisable because the options have vested pursuant to the Schedules to the 2014 Option Agreement.

53.    Lundberg is entitled to exercise his right and option to purchase the shares he is owed because his "Employment" has not been terminated. Specifically, Lundberg was at all relevant times an employee and/or advisor of Vivint Solar and/or Vivint Smart Home, and Vivint Solar is an "Affiliate" of

Vivint Smart Home because both entities are under common control of 313.  *Id.*
§§ 2(b), (q).

54.     Lundberg performed his obligations under the terms of the 2014
Option Agreement by timely exercising his right to the First Equity Award by
providing written notice to Vivint Solar of his intent to exercise his First Equity
Award, specifying the number of shares of common stock for which his option was
being exercised, and tendering payment in full of the exercise price.  *Id.* §§ 2(b)(i).

55.     Vivint Solar materially breached the 2014 Option Agreement by
refusing to deliver to Lundberg his First Equity Award as required by the terms of
the 2014 Option Agreement.  *Id.* §§ 1(a), 2(c)(3), 4(b).

56.     As a direct and proximate result of Vivint Solar's material breach of
the 2014 Option Agreement, Lundberg has suffered and will continue to suffer
damages not less than the amount of value of Vivint Solar's stock less the exercise
price of Lundberg's options.

## SECOND CAUSE OF ACTION
(Breach of the Implied Covenant of Good Faith and Fair Dealing Against Vivint
Solar – 2014 Option Agreement – in the Alternative)

57.     Lundberg hereby incorporates by reference the allegations set forth in
the preceding paragraphs as though fully set forth herein.

58.    Lundberg and Vivint Solar entered into the 2014 Option Agreement whereby Vivint Solar agreed, among other things, that it would deliver to Lundberg his First Equity Award upon satisfying the terms of the 2014 Option Agreement.

59.    Under Utah law, there is a covenant of good faith and fair dealing implied in the 2014 Option Agreement whereby Vivint Solar covenanted that it would not do anything that would have the effect of destroying or injuring Lundberg's rights to receive the benefits of the 2014 Option Agreement.

60.    Lundberg performed his obligations and the covenants under the 2014 Option Agreement such that he is entitled to receive his First Equity Award from Vivint Solar.

61.    Vivint Solar had an implied duty under the 2014 Option Agreement to timely deliver to Lundberg his First Equity Award, to accurately interpret the 2014 Option Agreement, to accurately interpret and characterize Vivint Solar's relationship to Vivint Smart Home, to accurately represent 313's relationship to Vivint Solar and Vivint Smart Home, and to accurately represent Lundberg's role and relationship with Vivint Solar and Vivint Smart Home during the relevant time periods under the 2014 Option Agreement.

107759967  0204718-00001

62.     To the extent Vivint Solar has not breached express provisions of the 2014 Option Agreement, it has breached the covenant of good faith and fair dealing by failing to timely deliver to Lundberg his First Equity Award, by incorrectly interpreting the 2014 Option Agreement, by incorrectly interpreting and characterizing Vivint Solar's relationship with Vivint Smart Home, by inaccurately representing 313's relationship to Vivint Solar and Vivint Smart Home, and inaccurately representing Lundberg's role and relationship with Vivint Solar and Vivint Smart Home during the relevant periods under the 2014 Option Agreement.

63.     As a direct and proximate result of Vivint Solar's breach of the covenant of good faith and fair dealing in the 2014 Option Agreement, Lundberg has suffered and will continue to suffer damages not less than the amount of value of Vivint Solar's stock less the exercise price of Lundberg's options.

### THIRD CAUSE OF ACTION
(Breach of Contract – 2015 RSU Agreement – Against Vivint Solar)

64.     Lundberg hereby incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

65.     On April 3, 2015, Vivint Solar and Lundberg entered into the 2015 RSU Agreement.  The 2015 RSU Agreement constitutes a binding contract between Vivint Solar and Lundberg.

22

66.     The 2015 RSU Agreement granted Lundberg 7,632 RSUs and a nonqualified stock option to purchase 7,632 shares of Vivint Solar common stock. 2015 RSU Agreement § 1.

67.     The 2015 RSU Agreement provides that Vivint Solar will deliver to Lundberg his Second Equity Award "as soon as practicable after vesting, but within the period 60 days following the vesting date." *Id.* § 2.  Under the 2015 RSU Agreement, 2385 RSUs were delivered to Lundberg in 2016, and the remaining 5247 RSUs were fully vested as of May 14, 2019.

68.     Lundberg was entitled to receive the full amount of the RSUs awarded under the Second Equity Award pursuant to the vesting scheduling in the 2015 RSU Agreement insofar as he was a "Service Provider" on relevant vesting dates. 2014 Plan § 21(kk).  Under the 2014 Plan, a "Service Provider" means an "Employee, Director or Consultant." *Id.*  An "Employee" includes "any person, including Officers and Directors, employed by the Company *or any member of the Company Group. . . ." Id.* § 21(m)

69.     Lundberg was an "Employee" because he was a consultant for Vivint Solar and/or employed by Vivint Smart Home, which is a member of the "Company Group," during the relevant vesting dates under the 2015 RSU Agreement.  *Id.* § 21(j).  Vivint Smart Home is a member of the "Company Group"

23

because Vivint Smart Home, "at the time of any determination, directly or indirectly, [wa]s in control of, [wa]s controlled by or [wa]s under common control with [Vivint Solar]." *Id.* § 21(j).  Specifically, Vivint Solar and Vivint Smart Home were under the common control of 313.

70.     Lundberg performed his obligations and the covenants under the terms of the 2015 RSU Agreement because at all relevant times he was a consultant for Vivint Solar and/or an employee of Vivint Smart Home.

71.     Vivint Solar materially breached the 2015 RSU Agreement by failing to deliver to Lundberg the entirety of the RSUs granted under the Second Equity Award as required by the terms of the 2015 RSU Agreement.  2015 RSU Agreement §§ 1, 2, 3; 2014 Plan §§ 5, 6.

72.     As a direct and proximate result of Vivint Solar's material breach of the 2015 RSU Agreement, Lundberg has suffered and will continue to suffer damages not less than the amount of value of his Second Equity Award.

## FOURTH CAUSE OF ACTION
(Breach of the Implied Covenant of Good Faith and Fair Dealing – 2015 RSU Agreement – Against Vivint Solar – in the Alternative)

73.     Lundberg hereby incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

74.     Lundberg and Vivint Solar entered into the 2015 RSU Agreement whereby Vivint Solar agreed, among other things, that it would pay to Lundberg his Second Equity Award upon his satisfaction of the terms of the 2015 RSU Agreement.

75.     Under Utah law, there is a covenant of good faith and fair dealing implied in the 2015 RSU Agreement whereby Vivint Solar covenanted that it would not do anything that would have the effect of destroying or injuring Lundberg's rights to receive the benefits of the 2015 RSU Agreement.

76.     Lundberg performed his obligations and the covenants under the 2015 RSU Agreement such that he is entitled to receive his Second Equity Award from Vivint Solar.

77.     Vivint Solar had an implied duty under the 2015 RSU Agreement to timely deliver to Lundberg his Second Equity Award, to accurately interpret the 2015 RSU Agreement, to accurately interpret and characterize Vivint Solar's relationship to Vivint Smart Home, to accurately represent 313's relationship to Vivint Solar and Vivint Smart Home, and to accurately represent Lundberg's role and relationship with Vivint Solar and Vivint Smart Home during the relevant time periods under the 2015 RSU Agreement.

78.     To the extent Vivint Solar has not breached express provisions of the 2015 RSU Agreement, it has breached the covenant of good faith and fair dealing by failing to timely deliver to Lundberg his Second Equity Award, by incorrectly interpreting the 2015 RSU Agreement, by incorrectly interpreting and characterizing Vivint Solar's relationship to Vivint Smart Home, by inaccurately representing 313's relationship to Vivint Solar and Vivint Smart Home, and inaccurately representing Lundberg's role and relationship with Vivint Solar and Vivint Smart Home during the relevant periods under the 2015 RSU Agreement.

79.     As a direct and proximate result of Vivint Solar's breach of the covenant of good faith and fair dealing in the 2015 RSU Agreement, Lundberg has suffered and will continue to suffer damages not less than the amount of value of his Second Equity Award.

## FIFTH CAUSE OF ACTION
(Breach of Contract – 2016 RSU Agreement – Against Vivint Solar)

80.     Lundberg hereby incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

81.     On May 9, 2016, Vivint Solar and Lundberg entered into the 2016 RSU Agreement.  The 2016 RSU Agreement constitutes a binding contract between Vivint Solar and Lundberg.

107759967  0204718-00001

82.   The 2016 RSU Agreement granted to Lundberg 88,706 RSUs.  2016 RSU Agreement § 1.

83.   The 2016 RSU Agreement provides that Vivint Solar will pay to Lundberg his Third Equity Award "as soon as practicable after vesting, but within the period 60 days following the vesting date."  *Id.* § 2.

84.   Under the 2016 RSU Agreement, Lundberg's Third Equity Award had a two-year vesting period, with 50% of the RSUs eligible to vest on May 15, 2017 and 50% eligible to vest on May 15, 2018.  Accordingly, Lundberg's Third Equity Award fully vested on May 15, 2018.

85.   Lundberg was entitled to receive the Third Equity Award pursuant to the vesting schedule in the 2016 RSU Agreement as long as he was a "Service Provider" on relevant vesting dates.  2014 Plan § 21(kk).  Under the 2014 Plan, a "Service Provider" means an "Employee, Director or Consultant."  *Id.*  An "Employee" includes "any person, including Officers and Directors, employed by the Company ***or any member of the Company Group.*** . . ."  *Id.* § 21(m)

86.   Lundberg was an "Employee" because he was a consultant for Vivint Solar and/or employed by Vivint Smart Home, which was a member of the "Company Group," on the relevant vesting dates under the 2016 RSU Agreement.  *Id.* § 21(j).  Vivint Smart Home is a member of the "Company Group" because

27

Vivint Smart Home was "at the time of any determination, directly or indirectly, . . . under common control with [Vivint Solar]." *Id.* § 21(j). Specifically, Vivint Solar and Vivint Smart Home were under the common control of 313.

87.     Lundberg performed his obligations and the covenants under the terms of the 2016 RSU Agreement because at all relevant times he was a consultant for Vivint Solar and/or an employee of Vivint Smart Home.

88.     Vivint Solar materially breached the 2016 RSU Agreement by failing to deliver to Lundberg his Third Equity Award as required by the terms of the 2016 RSU Agreement. 2016 RSU Agreement §§ 1, 2, 3; 2014 Plan §§ 5, 6.

89.     As a direct and proximate result of Vivint Solar's material breach of the 2016 RSU Agreement, Lundberg has suffered and will continue to suffer damages not less than the amount of value of his Third Equity Award.

## SIXTH CAUSE OF ACTION
(Breach of the Implied Covenant of Good Faith and Fair Dealing – 2016 RSU Agreement – Against Vivint Solar – in the Alternative)

90.     Lundberg hereby incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

91.     Lundberg and Vivint Solar entered into the 2016 RSU Agreement whereby Vivint Solar agreed, among other things, that it would pay to Lundberg his Third Equity Award if he satisfied the terms of the 2016 RSU Agreement.

107759967  0204718-00001

92.     Under Utah law, there is a covenant of good faith and fair dealing implied in the 2016 RSU Agreement whereby Vivint Solar covenanted that it would not do anything that would have the effect of destroying or injuring Lundberg's rights to receive the benefits of the 2016 RSU Agreement.

93.     Lundberg performed his obligations and the covenants under the 2016 RSU Agreement such that he is entitled to receive his Third Equity Award from Vivint Solar.

94.     Vivint Solar had an implied duty under the 2016 RSU Agreement to timely deliver to Lundberg his Third Equity Award, to accurately interpret the 2016 RSU Agreement, to accurately interpret and characterize Vivint Solar's relationship to Vivint Smart Home, to accurately represent 313's relationship to Vivint Solar and Vivint Smart Home, and to accurately represent Lundberg's role and relationship with Vivint Solar and Vivint Smart Home during the relevant time periods under the 2016 RSU Agreement.

95.     To the extent Vivint Solar has not breached express provisions of the 2016 RSU Agreement, it has breached the covenant of good faith and fair dealing by failing to timely deliver to Lundberg his Third Equity Award, by incorrectly interpreting the 2016 RSU Agreement, by incorrectly interpreting and characterizing Vivint Solar's relationship to Vivint Smart Home, by inaccurately

29

representing 313's relationship to Vivint Solar and Vivint Smart Home, and inaccurately representing Lundberg's role and relationship with Vivint Solar and Vivint Smart Home during the relevant periods under the 2016 RSU Agreement.

96.    As a direct and proximate result of Vivint Solar's breach of the covenant of good faith and fair dealing in the 2016 RSU Agreement, Lundberg has suffered and will continue to suffer damages not less than the amount of value of his Third Equity Award.

**SEVENTH CAUSE OF ACTION**
(Conversion – Against Vivint Solar – in the Alternative)

97.    Lundberg hereby incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

98.    Lundberg had the right to possess the RSUs Vivint Solar granted to Lundberg after the RSUs vested.

99.    Vivint Solar intentionally and unlawfully interfered with the RSUs that Lundberg was entitled to receive by refusing to deliver the RSUs to Lundberg.

100.   Vivint Solar's interference deprived Lundberg of possession of the RSUs, to which he was entitled.

101.    As a direct and proximate result of Vivint Solar's unlawful conduct, Lundberg has suffered and will continue to suffer damages not less than the

107759967  0204718-00001

amount of the RSUs Vivint Solar granted to Lundberg, but refused to deliver to him.

### EIGHTH CAUSE OF ACTION
(Negligent Misrepresentation – Against Vivint Solar and John Does – in the Alternative)

102.   Lundberg hereby incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

103.   To the extent Vivint Solar and John Does interpret the term "Affiliate" under the 2013 and 2014 Plans such that Vivint Solar is not an affiliate or sister company of Vivint Smart Home, or under the common control of a parent company, Vivint Solar and John Does made knowingly false statements of material fact to Lundberg and others when stating in public securities filings that Vivint Solar is an "affiliate" and a "sister company" of Vivint Smart Home.

104.   In addition, Vivint Solar and John Does made false statements of material fact by representing to Lundberg that, although he was transferring to Vivint Smart Home, he would maintain a position at Vivint Solar as an advisor and consultant.

105.   To the extent those representations were false, Vivint Solar and John Does made those statements carelessly or negligently, expecting that Lundberg

31

would rely on those statements when transferring to Vivint Smart Home, thereby forfeiting his Equity Awards (according to Vivint Solar).

106.   Lundberg reasonably relied on the statements made by Vivint Solar and John Does in transferring to Vivint Smart Home and continuing to advise and consult Vivint Solar.  Specifically, Vivint Solar's and John Does' statements led Lundberg to believe that he would not forfeit his Equity Awards by transferring to Vivint Smart Home and continuing to advise and consult Vivint Solar.

107.   To the extent that Lundberg has forfeited his Equity Awards as a proximate result of Vivint Solar's and John Does' conduct, Lundberg has been damaged in the amount of the loss of his Equity Awards.

### NINTH CAUSE OF ACTION
(Fraudulent Inducement – Against Vivint Solar and John Does – in the Alternative)

108.   Lundberg hereby incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

109.   To the extent Vivint Solar and John Does interpret the term "Affiliate" under the 2013 and 2014 Plans such that Vivint Solar is not an affiliate or sister company of Vivint Smart Home, or under the common control of a parent company, Vivint Solar and John Does made knowingly false statements of material fact to Lundberg and others when stating in public securities filings that Vivint

Solar is an "affiliate" and a "sister company" of Vivint Smart Home. Those filings

include Vivint Solar's Form 10-Q quarterly reports and Form 10-K annual reports.

Indeed, Vivint Solar's most recent Form 10-K report (filed on March 10, 2020) and

Form 10-Q report (filed on August 5, 2020) asserted that the two companies were

sister companies and affiliates.

110.   In addition, Vivint Solar made false statements of material fact by

representing to Lundberg that, although he was transferring to Vivint Smart Home,

he would maintain a position at Vivint Solar as an advisor and consultant. Those

false statements were made by Vivint Solar's chief executive officer, David

Bywater, and general counsel, Dan Black in or around June 2016.

111.   To the extent those representations were false, Vivint Solar and John

Does made false statements for the purpose of inducing Lundberg to transfer to

Vivint Smart Home and thereby forfeit his Equity Awards (according to Vivint

Solar).

112.   Lundberg reasonably relied on the statements made by Vivint Solar

and John Does in transferring to Vivint Smart Home and continuing to advise and

consult Vivint Solar. In particular, Vivint Solar's and John Does' statements led

Lundberg to believe that he would not forfeit his Equity Awards by transferring to

Vivint Smart Home.

113.   To the extent that Lundberg has forfeited his Equity Awards as a proximate result of Vivint Solar's and John Does' conduct, Lundberg has been damaged in the amount of the loss of his Equity Awards.

114.   Vivint Solar's and John Does' conduct in fraudulently inducing Lundberg to transfer from Vivint Solar to Vivint Smart Home was done with the intent to injure Lundberg and/or enrich Vivint Solar and/or John Does or in conscious disregard of, or reckless indifference toward, Lundberg's rights.  As such, Lundberg is entitled to exemplary and punitive damages against Vivint Solar and John Does in an amount to be determined at trial.

## TENTH CAUSE OF ACTION
(Securities Fraud in Violation of Section 10(b) of the Securities Exchange Act of 1934 – Against Vivint Solar and John Does)

115.   Lundberg hereby incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

116.   Section 10(b) of the Securities Exchange Act of 1934 makes it unlawful to "use or employ, in connection with the purchase or sale of any security" a "manipulative or deceptive device or contrivance in contravention of such rules and regulation as the [SEC] may prescribe."  15 U.S.C. § 78j(b). "Security" includes, among other things, stocks and "any instrument commonly known as a security."  15 U.S.C. § 78c(a)(10).

107759967  0204718-00001

117.   Under Section 10(b), it is unlawful for a company to, in connection with the purchase or sale of any security, to (1) employ any device, scheme, or artifice to defraud; (2) make any untrue statement of material fact or to omit to state a material fact necessary in order to make the statements made not misleading; or (3) engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.  17 C.F.R. § 240.10b-5.

118.   According to Vivint Solar, Vivint Solar and John Does made material misstatements or omissions by representing in public SEC filings that Vivint Solar and Vivint Smart Home are "affiliates," "sister companies," and are under the common control of 313.

119.   Those statements were made with the intent to deceive Lundberg, and potentially others, into believing that Vivint Solar and Vivint Smart Home, under the 2013 and 2014 Plans, are "Affiliates" and are under the common control of 313 and thus part of the same "Company Group."  One purpose of those statements was to lead employees, like Lundberg, to continue to provide services to Vivint Solar and/or Affiliates under the belief that they would retain any equity awards.

120.   During the period giving rise to this claim, Vivint Solar and John Does carried out a plan, scheme, and course of conduct that was intended to deceive Lundberg by not adequately disclosing to him that they would treat his

transition from Vivint Solar to Vivint Smart Home as a transition that would terminate his Equity Awards, causing him to invest his time and skill for both companies under the impression that his services would be compensated by the Equity Awards promised to him.  Vivint Solar's and John Does' material misstatements or omissions caused Lundberg to transfer from Vivint Solar to Vivint Smart Home and, according to Vivint Solar, thereby forfeit his Equity Awards.

121.   Vivint Solar and John Does (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business that failed to disclose the effect the transition would have on Lundberg specifically, and, in the aggregate, the anti-dilutive effect that the cancellation of Lundberg's and other similarly situated employees would have on the Vivint Solar shareholders in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.  Vivint Solar and John Does are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons.

122.   Vivint Solar and John Does, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and

36

participated in a continuous course of conduct to conceal adverse material information about the business, operations, and future prospects of Vivint Solar as specified herein.

123.   Vivint Solar and John Does had actual knowledge of the misrepresentations and omissions of material facts set forth herein or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them.  Such material representations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing the relationship of Vivint Solar's affiliates, as demonstrated by Vivint Solar's and John Does' overstatements and misstatements of Vivint Solar's business, operations, and earnings.

124.   Vivint Solar and John Does, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

125.   As a result of the dissemination of the materially false and misleading information, and failure to disclose material facts as set forth above, the market price of Vivint Solar's securities was artificially inflated during the period.

107759967  0204718-00001

126.   Vivint Solar's and John Does' deliberate actions and misrepresentations to induce Lundberg to continue providing services to Vivint Solar while at the same time voiding his substantial equity awards shows Vivint Solar's and John Does' scienter in making misleading statements.  Due to the misstatements and misconduct by Vivint Solar and John Does, Lundberg agreed to continue providing services to Vivint Solar and transfer from Vivint Solar to Vivint Smart Home, which, unbeknownst to Lundberg, caused him significant financial loss.

127.   By virtue of the foregoing, Vivint Solar and John Does have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

128.   As a direct and proximate result of Vivint Solar's and John Does' material misstatements or omissions, Lundberg has suffered and will continue to suffer damages in the amount of the value of his Equity Awards.

129.   Vivint Solar's and John Does' material misstatements or omissions were done with the intent to injure Lundberg and/or enrich Vivint Solar and/or John Does, or in conscious disregard of, or reckless indifference toward, Lundberg's rights.  As such, Lundberg is entitled to exemplary and punitive damages against Vivint Solar and John Does in an amount to be determined at trial.

## ELEVENTH CAUSE OF ACTION
(Violation of Sections 11 and 12 of the 1933 Securities Act – Against Vivint
Solar and John Does)

130.   Lundberg hereby incorporates by reference the allegations set forth in
the preceding paragraphs as though fully set forth therein.

131.   Under Section 11(a) of the 1933 Securities Act, a company is liable if
"any part of its registration statement, when such part became effective, contained
an untrue statement of material fact or omitted to state a material fact required to
be stated therein or necessary to make the statements therein not misleading."

132.   Section 12(a)(2) imposes liability if the offer or sale of a security was
made using a prospectus or oral communication containing material misstatements
or omissions.

133.   Lundberg, through his employment with and consulting services
performed for Vivint Solar, effectively invested his time with the expectation that
he would receive the options and RSUs.

134.   Vivint Solar and John Does represented to Lundberg and shareholders
that Vivint Solar and Vivint Smart Home are affiliates.  Vivint Solar and John
Does failed to represent to Lundberg that, by transferring from Vivint Solar to
Vivint Smart Home, he would be transferring to a company that was not affiliated

with Vivint Solar for purposes of the Equity Awards.  Failing to represent that the companies were not affiliated was a material misrepresentation.

135.   Lundberg relied on the SEC registration statement for Vivint Solar, which specifically states that the Vivint companies are affiliated, when he decided to transition from Vivint Solar to Vivint Smart Home.

136.   Lundberg relied on Vivint Solar's and John Does' false written representations that the Vivint entities are affiliates when he decided to leave his position at Vivint Solar and, unbeknownst to him, forego his Equity Awards.

137.   Since there are likely other employees similarly situated to Lundberg who transitioned from Vivint Solar to Vivint Smart Home, the aggregate effect of the termination of their equity grants in their various forms was and, based upon information and belief, is material.  Yet, such aggregate effects of the termination was not disclosed to Vivint Solar investors or the Securities and Exchange Commission as required by various provisions of Regulation S-K.

138.   As a direct and proximate result of Vivint Solar's and John Does' material misstatements or omissions, Lundberg has suffered and will continue to suffer damages in the amount of the value of his Equity Awards.

139.   Vivint Solar's and John Does' material misstatements or omissions were done with the intent to injure Lundberg and/or enrich Vivint Solar and/or

John Does, or in conscious disregard of, or reckless indifference toward,

Lundberg's rights.  As such, Lundberg is entitled to exemplary and punitive

damages against Vivint Solar and John Does in an amount to be determined at trial.

## TWELFTH CAUSE OF ACTION

(Violation of Section 20(a) of the Exchange Act – Against John Does)

140.   Lundberg hereby incorporates by reference the allegations set forth in

the preceding paragraphs as though fully set forth therein.

141.   John Does acted as controlling persons of Vivint Solar within the

meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their

high-level positions and their ownership and contractual rights, participation in,

and/or awareness of Vivint Solar's operations and intimate knowledge of the false

financial statements filed by Vivint Solar with the SEC and disseminated to the

investing public, John Does had the power to influence and control, and did

influence and control, directly or indirectly, the decision-making of Vivint Solar,

including the content and dissemination of the various statements which Lundberg

contends are false and misleading.  John Does were provided with or had unlimited

access to copies of Vivint Solar's reports, press releases, public filings, and other

statements alleged by Lundberg to be misleading prior to and/or shortly after these

statements or omissions were issued and had the ability to prevent the issuance of the statements or omissions or cause the statements to be corrected.

142.   In particular, John Does had direct and supervisory involvement in the day-to-day operations of Vivint Solar and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

143.   As set forth above, Vivint Solar and John Does each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.  By virtue of their position as controlling persons, John Does are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of John Does' wrongful conduct, Lundberg suffered damages in connection with the loss of his Equity Awards.

## **PRAYER FOR RELIEF**

WHEREFORE, Lundberg prays for judgment against Vivint Solar and John Does as follows:

A.   On the First through Eighth Causes of Action:

1.   For general compensatory damages in an amount to be proven at trial;

2.   For an order requiring Vivint Solar to deliver to Lundberg his

First, Second, and Third Equity Awards;

3.    For reasonable attorney fees and costs allowed by law; and

4.    For pre- and post-judgment interest as allowed by law.

B.    On the Ninth through the Twelfth Causes of Action:

1.    For general compensatory damages in an amount to be proven at trial;

2.    For pre- and post-judgment interest as allowed by law;

3.    For reasonable attorney fees and costs allowed by law; and

4.    For punitive damages allowed by law.

C.    On All Causes of Action:

1.    For such other and further relief as the Court deems just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Lundberg demands a trial by jury of all issues so triable.

43

DATED:  September 28, 2020.

STOEL RIVES LLP


*/s/ David J. Jordan*
David J. Jordan
Jordan C. Bledsoe

*Attorneys for Jim Lundberg*